UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAYO INC., a Michigan corporation,

                Plaintiff,                    Case No. 06-14963

vs.                                    HONORABLE DENISE PAGE HOOD

ZIONS FIRST NATIONAL BANK, a Utah
corporation,

                Defendant.

_____/

MEMORANDUM OPINION AND ORDER
AND NOTICE OF HEARING

I.       INTRODUCTION

       This matter is before the Court on Defendant, Zions First National Bank's Response to
Plaintiff's Motion for Preliminary Injunction, Motion to Dissolve Temporary Restraining Order and
Motion for Summary Judgment, filed on November 13, 2006.  Defendant requests that this Court
dissolve the November 3, 2006 Temporary Restraining Order, deny Plaintiff's request for
Preliminary Injunction and dismiss Plaintiff's Complaint with Prejudice.

       On November 3, 2006, Plaintiff, Sayo, Inc. filed the instant action alleging, Count I,
Conversion, Count II, Tortious Interference with Contract/Business Expectancy, and Count III,
Promissory Estoppel.  On the same day, Plaintiff also filed an Emergency Motion for Temporary
Restraining Order or, in the Alternative, for Preliminary Injunction.  Pursuant to Fed. R. Civ. P.
65(b),  Plaintiff sought to enjoin  Defendant from foreclosing on certain real property located in
Southfield, Michigan, owned and operated by Plaintiff as a Ramada Inn hotel ("Hotel").  On

1

November 3, 2006, this Court issued a Temporary Restraining Order enjoining the Foreclosure Action scheduled to take place that same day.

## II.    STATEMENT OF FACTS

The instant matter arises out of a Mortgage Agreement entered into by the parties.  In order to secure a loan from Defendant in the amount of $2,000,000.00, Plaintiff gave Defendant a Promissory Note, and  a Mortgage on the real property owned by Plaintiff, located at 17107 W. Nine Mile Road, Southfield, Michigan.  The Hotel, located on the real property, is insured by Traveler's Indemnity Company ("Traveler's").  In January 2004, the Hotel was vandalized during a New Years Eve party held in one of the banquet rooms.  The damage to the Hotel exceeded $2,100,000.00. Traveler's issued eight checks totaling over $2,118,675.30 to Plaintiff for compensation for the property and business income losses.  Traveler's included Defendant as a loss payee on the checks because Defendant is a secured creditor pursuant to the parties' Mortgage Agreement.  Plaintiff's Complaint alleges that Defendant failed to timely tender over $860,000.00 of the insurance proceeds, which according to Plaintiff, was necessary to continue operations and sustain viability of its Hotel business.  Plaintiff also asserts that although Plaintiff informed Defendant of this critical need for the insurance proceeds, Defendant unjustifiably delayed paying Plaintiff.  When Defendant eventually remitted payment it was too late, causing Plaintiff to fail to meet its Mortgage payments due to Defendant.  Defendant asserts that it requested documentation from Plaintiff establishing that the insurance proceeds were going to pay for the necessary repairs for the damage to the Hotel. Defendant argues that Plaintiff was uncooperative in providing this supporting documentation, and as soon as Plaintiff provided it to Defendant, Defendant remitted the outstanding $860,000.00**.**

2

## III.     APPLICABLE LAW & ANALYSIS

### A.     Defendant's Motion for Summary Judgment

Defendant argues that the Complaint should be dismissed because this Court should abstain from hearing this matter.  Defendant asserts that Plaintiff neglected to inform this Court that there is another proceeding arising out of the same transaction and between the same parties in Oakland County Circuit Court, case number 06-077576-CK.   On or about September 21, 2006, Defendant filed an action in Oakland County Circuit Court, alleging, Count I, Action on Guaranty, and Count II, Request for a Preliminary Injunction and Appointment of Receiver over the Business Conducted at the Property.

In the Oakland County Circuit Court case, the Court entered a preliminary injunction to prevent Plaintiff from allowing the property to be exposed to further damage.  It is Defendant's contention that the claims Plaintiff asserts in the present matter are compulsory counterclaims and should have been asserted in the state court action pursuant to M.C.R. 2.203(a).  MCR 2.203(a) states:

> In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

The Court will not address the merits of this issue as Plaintiff has not been afforded adequate time to respond to Defendant's Motion for Summary Judgment pursuant to L.R. 7.1(d)(1)(B).[1] As such,

---

[1]  L.R. 7.1(d)(1)(B) states:

> A response to a dispositive motion must be filed within 21 days after service of the motion.

3

the Court will proceed to the merits of Defendant's request to dissolve the Temporary Restraining

Order and Plaintiff's Motion for Preliminary Injunction.

**B.      Defendant's Motion to Set Aside the Temporary Restraining Order**

On November 17, 2006, the Court heard arguments on the Motion to Set Aside the

Temporary Restraining Order (TRO).  The Court denied the Motion for reasons stated in its Order

granting Plaintiff's Motion for TRO, and in any event the TRO has expired under Fed. R. Civ. P.

65(b), which prohibits granting TROs for a period in excess of 10 days without good cause shown.

Additionally at the hearing, the Court requested the parties submit supplemental briefs on

two issues: 1) whether a federal or state court could enjoin or extend the statutory period for

redemption, as Defendant claimed no irreparable harm occurred as Plaintiff had a six-month

redemption period to repurchase the property; and 2) whether there was any case law on the issue

of when irreparable harm occurs, at the foreclosure sale, or once the redemption period has expired.

**C.      Plaintiff's Motion for Preliminary Injunction**

Four factors must be balanced and considered before the Court may issue a preliminary

injunction pursuant to Fed.R.Civ.P. 65(b): (1) the likelihood of the plaintiff's success on the merits;

(2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others

which will occur if the injunction is granted; and (4) whether the injunction would serve the public

interest.  *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher*

*Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866

F.2d 162, 166 (6th Cir. 1989).  "None of these factors, standing alone, is a prerequisite to relief;

rather, the court should balance them."  *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir.

4

1996).

### 1.      First Factor - Likelihood of Success on the Merits

Defendant asserts that Plaintiff will not succeed on the merits of its conversion, tortious interference and promissory estoppel claims.

In order to succeed on its conversion claim, Plaintiff must demonstrate that Defendant knowingly bought, received or aided "in the concealment of any stolen, embezzled, or converted property." M.C.L. § 600.2919a, *see Head v. Phillips Camper Sales & Rental, Inc*., 234 Mich. App. 94, 111, 593 N.W. 2d 595 (1999).  For purposes of the preliminary injunction, Plaintiff has not shown that it is likely to succeed on this claim.  Defendant obtained the insurance proceed checks as a secured creditor due to the Mortgage Agreement entered into between the parties.  The Mortgage Agreement between the parties expressly allows Defendant to receive insurance proceeds due to loss or damage to the property and to request that the damage be adequately repaired, as follows:

> **Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage . . . .

(Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., Mot. to Dissolve T.R.O. and Mot. for Summ. J., Ex. 3, Mortgage Agreement, p. 4)  Plaintiff also admits that Defendant remitted the outstanding $860,000.00 upon presentation of appropriate documentation.

5

In order for Plaintiff to succeed on its tortious interference claim, Plaintiff must demonstrate the following: 1) existence of a valid business relation or expectancy, 2) Defendant's knowledge of the relationship or expectancy, 3) Defendant's intentional interference inducing or causing a breach or termination of the relationship or expectancy and 4) damage to Plaintiff due to the disruption of the relationship or expectancy. *See Woody v. Tamer*, 158 Mich. App. 764, 776-77, 405 N.W. 2d 213 (1987). Defendant argues that Plaintiff likewise cannot succeed on its claim because Plaintiff will be unable to show that by withholding the insurance proceeds, Defendant intentionally interfered with, and ultimately disrupted the business relationship or expectancy with Traveler's. Plaintiff argues that Defendant's actions in withholding the insurance payments from Traveler's was improper and intentional and resulted in the destruction of Plaintiff's hotel business. As stated earlier, the Mortgage Agreement provides that Defendant may obtain the proceeds and request documentation as proof that Plaintiff satisfactorily repaired the damage to the hotel. While Plaintiff complains that the delay in remitting the insurance proceeds was unreasonable, there has been no showing of unreasonableness on the part of Defendant. For purposes of this motion, it appears that Defendant was exercising its rights under the Mortgage Agreement. Plaintiff has not demonstrated that it will succeed on the merits of this claim, as Plaintiff has not shown that Defendant intentionally interfered with, and caused the termination of Plaintiff's business relationship or expectancy with Traveler's.

In order for Plaintiff to be able to succeed on its promissory estoppel claim, Plaintiff must show (1) the existence of a promise, (2) the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be

enforced if injustice is to be avoided. *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993). Plaintiff asserts that Defendant promised to tender the insurance proceeds in a timely manner and that Defendant had previously remitted $1,000,000.00.   Plaintiff asserts it justifiably relied and presumed, based on Defendant's conduct and promise, that Defendant would timely remit the insurance payments to Plaintiff.  Defendant counters that Plaintiff has pointed to no documentation supporting its theory that Defendant promised to remit the insurance payments in a timely manner.  Defendant claims it did not discover until August 2004, well after the January 2004 vandalism, that the Hotel was damaged.  Defendants also argue that they were seeking appropriate documentation before the release of the $860,000.00.  (*See* Mortgage Agreement,   p. 4,  Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., Mot. to Dissolve T.R.O. and Mot. for Summ. J., Ex. 3)  Plaintiff has failed to demonstrate that it will prevail on this claim for purposes of this motion.

### 2.    Second Factor - Irreparable Harm

Defendant asserts that Plaintiff's injury, the foreclosure on the property, originally scheduled for November 7, 2006, is not immediate or irreparable.  In Michigan there is a statutorily imposed redemption period of six months following foreclosure.  *See* M.C.L. § 600.3140.  Plaintiff has the opportunity to pay the amount due and owing and obtain the property within six months after the foreclosure sale.  Additionally, Defendant argues that Plaintiff was aware of the foreclosure action several months before Plaintiff filed the instant action and Emergency Motion for Temporary Restraining Order, or in the Alternative, for Preliminary Injunction.  As such, the immediacy of the pending foreclosure sale was self-imposed by Plaintiff.

As previously stated, at the November 17, 2006 hearing, the Court requested the parties submit supplemental briefs on two issues regarding foreclosure actions and irreparable harm.  In

Plaintiff's Supplemental Memorandum, filed on November 20, 2006, Plaintiff asserts that it will suffer irreparable harm if the foreclosure action is not stayed during these proceedings. The cases cited by Plaintiff in support of its assertion, however, are not directly on point. First, Plaintiff cites two bankruptcy cases in support of its theory that foreclosure on real property should be enjoined due to the resulting irreparable harm. *See In Re Grand Traverse Development Company Ltd. Partnership*, 151 B.R. 792 (W.D. Mich. 1993), *In re Gleasman*, 111 B.R. 595 (Bankr. W.D. Tex. 1990). In the bankruptcy context, the court and the parties are attempting to determine if there are available resources in the debtor's estate to satisfy its obligations to creditors, and this is not the situation in the present matter. The *Gleasman* court held that enjoining foreclosure is appropriate in situations where, if the plaintiff prevails, "the resulting liability would eliminate either the indebtedness or the lien, in turn eliminating the lender's right to foreclose." *In re Gleasman*, 111 B.R. at 601. In this case, as of October 2, 2006, Plaintiff owed a total of $2,150,405.01 on the Mortgage. This amount is over twice the amount of the insurance proceeds Plaintiff claims Defendant unjustifiably withheld for an extended period of time, and therefore, would not eliminate Plaintiff's indebtedness to Defendant. In *Medin*, the Court held that notwithstanding the availability of redemption for the plaintiff, foreclosure on the plaintiff's homestead would be irreparable and the trial court did not abuse its discretion by enjoining the foreclosure action. *Medin v. Liberty State Bank*, 1990 WL 152691 (Minn. App. 1990). This case is distinguishable from the present matter as it involved the plaintiff's homestead and not business property.

Defendant argues that Plaintiff will not be irreparably harmed by the foreclosure action, and in any event, this Court has the discretion to extend the redemption period beyond the statutory 6 month period. However, Defendant's cases are likewise not on point with the present matter.

Defendant asserts that this Court is authorized to extend the statutory redemption period as the Michigan Appellate Court has held that "a court may exercise its discretion to extend the redemption period in irregular circumstances such as fraud, accident, or mistake." *Hodge v. Ulmer*, 1997 WL 33343877 (Mich. App. 1997). No party has submitted evidence of fraud, mistake, or accident in this matter. Additionally, in both cases cited by Defendant, the court extended the redemption period for only a short time, in one case for six days and in another case for forty-three days, which may be of little help to Plaintiff in this case. *See Hodge,* 1997 WL 33343877 *1, *Jackson Investment Corp. v. Pittsfield Products, Inc.,* 162 Mich. App. 750, 413 N.W.2d 99 (1987).

Based on the parties' submissions, Plaintiff has not shown irreparable harm will occur at the time of the foreclosure sale since Plaintiff is allowed a redemption period after the foreclosure sale.

### 3.    Third and Fourth Factors - Risk of Harm to Plaintiff in Absence of Preliminary Injunction Versus Harm to Defendant and Public Interest

Plaintiff claims that it faces injury to its goodwill and reputation citing *Beaute Craft Supply Co. v. Revlon, Inc.*, 402 F. Supp. 385 (E.D. Mich. 1975). In *Beaute,* the plaintiff sold cosmetics and entered into a franchise agreement with Revlon to sell Revlon products. Revlon later terminated the agreement when the plaintiff began selling a competitor's products. In granting the plaintiff's motion for a preliminary injunction, which required the defendant to continue to do business with the plaintiff, the court found that termination of the franchise agreement caused irreparable harm to the plaintiff. *Beaute*, 402 F. Supp. at 388. The sale of Revlon products amounted to 20% to 25% of the plaintiff's sales volume and no harm would be done to the defendant in granting the preliminary injunction. *Id.* This case is distinguishable in that *Beaute* involved a franchise agreement and a product with a well-known trademark name.

Plaintiff's reliance upon the Sixth Circuit case of *Basicomputer Corp. v. Scott* is also without

9

merit. 973 F. 2d 507 (6th Cir. 1992). In *Basicomputer*, the Court enjoined the defendants from working with the plaintiff's competitor because "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer* dealt with a non-compete agreement in the employment context, where the defendants went to work for the plaintiff's competitors contrary to the express terms of the non-compete agreement, as well as took documents containing information on the plaintiff's customers and contacted these customers. *Basicomputer* is not on point with the present matter and does not support Plaintiff's argument that it will suffer irreparable harm if the foreclosure action proceeds.

Defendant asserts that a preliminary injunction would greatly harm Defendant as Defendant, in addition to incurring costs and attorney fees in defense of this action, is losing $614.00 per day combined with the outstanding amount owed by Plaintiff under the loan agreement of $1,854,159.76, as well as liens for unpaid taxes and assessments on the property roughly totaling $376,074.00. (Def.'s Resp. to Plf.'s Mot. for Preliminary Injunction, Mot. to Dissolve Temporary Restraining Order and Mot. for Summ. J., Aff. of Kenneth M. Pugh) Plaintiff is currently indebted to Defendant in the amount of $1,854,159.76 and the subject property has liens for unpaid taxes and assessments in the amount of $376,074.00, liens that are superior to Defendant's secured interest in the property.

In terms of public policy, there are public policy arguments in favor of both sides of the dispute. Public policy disfavors sale of real property through the foreclosure actions, but also favors parties to honor contractual agreements, such as the Mortgage Agreement in this case.

### 4.     Balancing the Factors

The first, second and third factors balance in favor of Defendant. Plaintiff cannot

10

demonstrate it will succeed on the merits of the claims asserted in its Complaint, nor that it will

suffer irreparable injury if the preliminary injunction does not issue, and that the harm to Defendant

does not outweigh the harm to Plaintiff.  As such, the Court will not issue a preliminary injunction

in this case enjoining Defendant from going forward with its foreclosure action.


**IV.**   <u>**CONCLUSION**</u>

　　　　Accordingly,

　　　　It is ORDERED that Plaintiff's Emergency Motion for Preliminary Injunction [**Docket No.
2, filed November 3, 2006**] is DENIED.

　　　　It is FURTHER ORDERED that Defendant's Motion to Dissolve Temporary Restraining

Order [**Docket No. 4, filed November 13, 2006**] is DENIED.

　　　　It is FURTHER ORDERED that a hearing on Defendant's Motion for Summary Judgment

[**Docket No. 4,  filed November 13, 2006**] will be held on January 10, 2007 at 2:00 p.m.

Plaintiff must file a Response by December 5, 2006, and any Reply Brief must be filed by December

15, 2006.


　　　　　　　　　　　　　　　　　　s/ DENISE PAGE HOOD_____
DATED: <u>November 22, 2006   </u>　　　DENISE PAGE HOOD
　　　　　　　　　　　　　　　　　　United States District Judge


　　　　I hereby certify that a copy of the foregoing document was served upon Michael J. Sharpe,
Esq. And Paul J. Millenbach, Esq. on November 22, 2006, by electronic and/or ordinary mail.

　　　　　　　　　　　　　　　　　　S/William F. Lewis_____
　　　　　　　　　　　　　　　　　　Case Manager


11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAYO INC., a Michigan corporation,

                **Plaintiff,**                    **Case No. 06-14963**

**vs.**                                    **HONORABLE DENISE PAGE HOOD**

ZIONS FIRST NATIONAL BANK, a Utah
corporation,

                **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER
## AND NOTICE OF HEARING

**I.**      **INTRODUCTION**

This matter is before the Court on Defendant, Zions First National Bank's Response to
Plaintiff's Motion for Preliminary Injunction, Motion to Dissolve Temporary Restraining Order and
Motion for Summary Judgment, filed on November 13, 2006. Defendant requests that this Court
dissolve the November 3, 2006 Temporary Restraining Order, deny Plaintiff's request for
Preliminary Injunction and dismiss Plaintiff's Complaint with Prejudice.

On November 3, 2006, Plaintiff, Sayo, Inc. filed the instant action alleging, Count I,
Conversion, Count II, Tortious Interference with Contract/Business Expectancy, and Count III,
Promissory Estoppel. On the same day, Plaintiff also filed an Emergency Motion for Temporary
Restraining Order or, in the Alternative, for Preliminary Injunction. Pursuant to Fed. R. Civ. P.
65(b), Plaintiff sought to enjoin Defendant from foreclosing on certain real property located in
Southfield, Michigan, owned and operated by Plaintiff as a Ramada Inn hotel ("Hotel"). On

1

November 3, 2006, this Court issued a Temporary Restraining Order enjoining the Foreclosure Action scheduled to take place that same day.

## II.    STATEMENT OF FACTS

The instant matter arises out of a Mortgage Agreement entered into by the parties.  In order to secure a loan from Defendant in the amount of $2,000,000.00, Plaintiff gave Defendant a Promissory Note, and  a Mortgage on the real property owned by Plaintiff, located at 17107 W. Nine Mile Road, Southfield, Michigan.  The Hotel, located on the real property, is insured by Traveler's Indemnity Company ("Traveler's").  In January 2004, the Hotel was vandalized during a New Years Eve party held in one of the banquet rooms.  The damage to the Hotel exceeded $2,100,000.00. Traveler's issued eight checks totaling over $2,118,675.30 to Plaintiff for compensation for the property and business income losses.  Traveler's included Defendant as a loss payee on the checks because Defendant is a secured creditor pursuant to the parties' Mortgage Agreement.  Plaintiff's Complaint alleges that Defendant failed to timely tender over $860,000.00 of the insurance proceeds, which according to Plaintiff, was necessary to continue operations and sustain viability of its Hotel business.  Plaintiff also asserts that although Plaintiff informed Defendant of this critical need for the insurance proceeds, Defendant unjustifiably delayed paying Plaintiff.  When Defendant eventually remitted payment it was too late, causing Plaintiff to fail to meet its Mortgage payments due to Defendant.  Defendant asserts that it requested documentation from Plaintiff establishing that the insurance proceeds were going to pay for the necessary repairs for the damage to the Hotel. Defendant argues that Plaintiff was uncooperative in providing this supporting documentation, and as soon as Plaintiff provided it to Defendant, Defendant remitted the outstanding $860,000.00**.**

III.     **APPLICABLE LAW & ANALYSIS**

   A.     **Defendant's Motion for Summary Judgment**

Defendant argues that the Complaint should be dismissed because this Court should abstain

from hearing this matter.  Defendant asserts that Plaintiff neglected to inform this Court that there

is another proceeding arising out of the same transaction and between the same parties in Oakland

County Circuit Court, case number 06-077576-CK.   On or about September 21, 2006, Defendant

filed an action in Oakland County Circuit Court, alleging, Count I, Action on Guaranty, and Count

II, Request for a Preliminary Injunction and Appointment of Receiver over the Business Conducted

at the Property.

In the Oakland County Circuit Court case, the Court entered a preliminary injunction to

prevent Plaintiff from allowing the property to be exposed to further damage.  It is Defendant's

contention that the claims Plaintiff asserts in the present matter are compulsory counterclaims and

should have been asserted in the state court action pursuant to M.C.R. 2.203(a).  MCR 2.203(a)

states:

> In a pleading that states a claim against an opposing party, the pleader must join
> every claim that the pleader has against that opposing party at the time of serving the
> pleading, if it arises out of the transaction or occurrence that is the subject matter of
> the action and does not require for its adjudication the presence of third parties over
> whom the court cannot acquire jurisdiction.

The Court will not address the merits of this issue as Plaintiff has not been afforded adequate time

to respond to Defendant's Motion for Summary Judgment pursuant to L.R. 7.1(d)(1)(B).[1] As such,

---

[1] L.R. 7.1(d)(1)(B) states:

> A response to a dispositive motion must be filed within 21 days
> after service of the motion.

3

the Court will proceed to the merits of Defendant's request to dissolve the Temporary Restraining Order and Plaintiff's Motion for Preliminary Injunction.

**B.      Defendant's Motion to Set Aside the Temporary Restraining Order**

On November 17, 2006, the Court heard arguments on the Motion to Set Aside the Temporary Restraining Order (TRO).  The Court denied the Motion for reasons stated in its Order granting Plaintiff's Motion for TRO, and in any event the TRO has expired under Fed. R. Civ. P. 65(b), which prohibits granting TROs for a period in excess of 10 days without good cause shown.

Additionally at the hearing, the Court requested the parties submit supplemental briefs on two issues: 1) whether a federal or state court could enjoin or extend the statutory period for redemption, as Defendant claimed no irreparable harm occurred as Plaintiff had a six-month redemption period to repurchase the property; and 2) whether there was any case law on the issue of when irreparable harm occurs, at the foreclosure sale, or once the redemption period has expired.

**C.      Plaintiff's Motion for Preliminary Injunction**

Four factors must be balanced and considered before the Court may issue a preliminary injunction pursuant to Fed.R.Civ.P. 65(b): (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and (4) whether the injunction would serve the public interest.  *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).  "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir.

4

1996).

### 1.    First Factor - Likelihood of Success on the Merits

Defendant asserts that Plaintiff will not succeed on the merits of its conversion, tortious interference and promissory estoppel claims.

In order to succeed on its conversion claim, Plaintiff must demonstrate that Defendant knowingly bought, received or aided "in the concealment of any stolen, embezzled, or converted property." M.C.L. § 600.2919a, *see Head v. Phillips Camper Sales & Rental, Inc*., 234 Mich. App. 94, 111, 593 N.W. 2d 595 (1999). For purposes of the preliminary injunction, Plaintiff has not shown that it is likely to succeed on this claim. Defendant obtained the insurance proceed checks as a secured creditor due to the Mortgage Agreement entered into between the parties. The Mortgage Agreement between the parties expressly allows Defendant to receive insurance proceeds due to loss or damage to the property and to request that the damage be adequately repaired, as follows:

> **Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage . . . .

(Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., Mot. to Dissolve T.R.O. and Mot. for Summ. J., Ex. 3, Mortgage Agreement, p. 4)  Plaintiff also admits that Defendant remitted the outstanding $860,000.00 upon presentation of appropriate documentation.

5

In order for Plaintiff to succeed on its tortious interference claim, Plaintiff must demonstrate the following: 1) existence of a valid business relation or expectancy, 2) Defendant's knowledge of the relationship or expectancy, 3) Defendant's intentional interference inducing or causing a breach or termination of the relationship or expectancy and 4) damage to Plaintiff due to the disruption of the relationship or expectancy. *See Woody v. Tamer*, 158 Mich. App. 764, 776-77, 405 N.W. 2d 213 (1987). Defendant argues that Plaintiff likewise cannot succeed on its claim because Plaintiff will be unable to show that by withholding the insurance proceeds, Defendant intentionally interfered with, and ultimately disrupted the business relationship or expectancy with Traveler's. Plaintiff argues that Defendant's actions in withholding the insurance payments from Traveler's was improper and intentional and resulted in the destruction of Plaintiff's hotel business. As stated earlier, the Mortgage Agreement provides that Defendant may obtain the proceeds and request documentation as proof that Plaintiff satisfactorily repaired the damage to the hotel. While Plaintiff complains that the delay in remitting the insurance proceeds was unreasonable, there has been no showing of unreasonableness on the part of Defendant. For purposes of this motion, it appears that Defendant was exercising its rights under the Mortgage Agreement. Plaintiff has not demonstrated that it will succeed on the merits of this claim, as Plaintiff has not shown that Defendant intentionally interfered with, and caused the termination of Plaintiff's business relationship or expectancy with Traveler's.

In order for Plaintiff to be able to succeed on its promissory estoppel claim, Plaintiff must show (1) the existence of a promise, (2) the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be

6

enforced if injustice is to be avoided.  *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993). Plaintiff asserts that Defendant promised to tender the insurance proceeds in a timely manner and that Defendant had previously remitted $1,000,000.00.   Plaintiff asserts it justifiably relied and presumed, based on Defendant's conduct and promise, that Defendant would timely remit the insurance payments to Plaintiff.  Defendant counters that Plaintiff has pointed to no documentation supporting its theory that Defendant promised to remit the insurance payments in a timely manner.  Defendant claims it did not discover until August 2004, well after the January 2004 vandalism, that the Hotel was damaged. Defendants also argue that they were seeking appropriate documentation before the release of the $860,000.00.  (*See* Mortgage Agreement,  p. 4,  Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., Mot. to Dissolve T.R.O. and Mot. for Summ. J., Ex. 3)  Plaintiff has failed to demonstrate that it will prevail on this claim for purposes of this motion.

### 2.    Second Factor - Irreparable Harm

Defendant asserts that Plaintiff's injury, the foreclosure on the property, originally scheduled for November 7, 2006, is not immediate or irreparable.  In Michigan there is a statutorily imposed redemption period of six months following foreclosure.  *See* M.C.L. § 600.3140.  Plaintiff has the opportunity to pay the amount due and owing and obtain the property within six months after the foreclosure sale.  Additionally, Defendant argues that Plaintiff was aware of the foreclosure action several months before Plaintiff filed the instant action and Emergency Motion for Temporary Restraining Order, or in the Alternative, for Preliminary Injunction.  As such, the immediacy of the pending foreclosure sale was self-imposed by Plaintiff.

As previously stated, at the November 17, 2006 hearing, the Court requested the parties submit supplemental briefs on two issues regarding foreclosure actions and irreparable harm.  In

Plaintiff's Supplemental Memorandum, filed on November 20, 2006, Plaintiff asserts that it will suffer irreparable harm if the foreclosure action is not stayed during these proceedings. The cases cited by Plaintiff in support of its assertion, however, are not directly on point. First, Plaintiff cites two bankruptcy cases in support of its theory that foreclosure on real property should be enjoined due to the resulting irreparable harm. *See In Re Grand Traverse Development Company Ltd. Partnership*, 151 B.R. 792 (W.D. Mich. 1993), *In re Gleasman*, 111 B.R. 595 (Bankr. W.D. Tex. 1990). In the bankruptcy context, the court and the parties are attempting to determine if there are available resources in the debtor's estate to satisfy its obligations to creditors, and this is not the situation in the present matter. The *Gleasman* court held that enjoining foreclosure is appropriate in situations where, if the plaintiff prevails, "the resulting liability would eliminate either the indebtedness or the lien, in turn eliminating the lender's right to foreclose." *In re Gleasman*, 111 B.R. at 601. In this case, as of October 2, 2006, Plaintiff owed a total of $2,150,405.01 on the Mortgage. This amount is over twice the amount of the insurance proceeds Plaintiff claims Defendant unjustifiably withheld for an extended period of time, and therefore, would not eliminate Plaintiff's indebtedness to Defendant. In *Medin*, the Court held that notwithstanding the availability of redemption for the plaintiff, foreclosure on the plaintiff's homestead would be irreparable and the trial court did not abuse its discretion by enjoining the foreclosure action. *Medin v. Liberty State Bank*, 1990 WL 152691 (Minn. App. 1990). This case is distinguishable from the present matter as it involved the plaintiff's homestead and not business property.

Defendant argues that Plaintiff will not be irreparably harmed by the foreclosure action, and in any event, this Court has the discretion to extend the redemption period beyond the statutory 6 month period. However, Defendant's cases are likewise not on point with the present matter.

8

Defendant asserts that this Court is authorized to extend the statutory redemption period as the Michigan Appellate Court has held that "a court may exercise its discretion to extend the redemption period in irregular circumstances such as fraud, accident, or mistake." *Hodge v. Ulmer*, 1997 WL 33343877 (Mich. App. 1997). No party has submitted evidence of fraud, mistake, or accident in this matter. Additionally, in both cases cited by Defendant, the court extended the redemption period for only a short time, in one case for six days and in another case for forty-three days, which may be of little help to Plaintiff in this case. *See Hodge,* 1997 WL 33343877 *1, *Jackson Investment Corp. v. Pittsfield Products, Inc.,* 162 Mich. App. 750, 413 N.W.2d 99 (1987).

Based on the parties' submissions, Plaintiff has not shown irreparable harm will occur at the time of the foreclosure sale since Plaintiff is allowed a redemption period after the foreclosure sale.

### 3. Third and Fourth Factors - Risk of Harm to Plaintiff in Absence of Preliminary Injunction Versus Harm to Defendant and Public Interest

Plaintiff claims that it faces injury to its goodwill and reputation citing *Beaute Craft Supply Co. v. Revlon, Inc.*, 402 F. Supp. 385 (E.D. Mich. 1975). In *Beaute,* the plaintiff sold cosmetics and entered into a franchise agreement with Revlon to sell Revlon products. Revlon later terminated the agreement when the plaintiff began selling a competitor's products. In granting the plaintiff's motion for a preliminary injunction, which required the defendant to continue to do business with the plaintiff, the court found that termination of the franchise agreement caused irreparable harm to the plaintiff. *Beaute*, 402 F. Supp. at 388. The sale of Revlon products amounted to 20% to 25% of the plaintiff's sales volume and no harm would be done to the defendant in granting the preliminary injunction. *Id*. This case is distinguishable in that *Beaute* involved a franchise agreement and a product with a well-known trademark name.

Plaintiff's reliance upon the Sixth Circuit case of *Basicomputer Corp. v. Scott* is also without

merit. 973 F. 2d 507 (6th Cir. 1992). In *Basicomputer*, the Court enjoined the defendants from working with the plaintiff's competitor because "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer* dealt with a non-compete agreement in the employment context, where the defendants went to work for the plaintiff's competitors contrary to the express terms of the non-compete agreement, as well as took documents containing information on the plaintiff's customers and contacted these customers. *Basicomputer* is not on point with the present matter and does not support Plaintiff's argument that it will suffer irreparable harm if the foreclosure action proceeds.

Defendant asserts that a preliminary injunction would greatly harm Defendant as Defendant, in addition to incurring costs and attorney fees in defense of this action, is losing $614.00 per day combined with the outstanding amount owed by Plaintiff under the loan agreement of $1,854,159.76, as well as liens for unpaid taxes and assessments on the property roughly totaling $376,074.00. (Def.'s Resp. to Plf.'s Mot. for Preliminary Injunction, Mot. to Dissolve Temporary Restraining Order and Mot. for Summ. J., Aff. of Kenneth M. Pugh) Plaintiff is currently indebted to Defendant in the amount of $1,854,159.76 and the subject property has liens for unpaid taxes and assessments in the amount of $376,074.00, liens that are superior to Defendant's secured interest in the property.

In terms of public policy, there are public policy arguments in favor of both sides of the dispute. Public policy disfavors sale of real property through the foreclosure actions, but also favors parties to honor contractual agreements, such as the Mortgage Agreement in this case.

### 4.      Balancing the Factors

The first, second and third factors balance in favor of Defendant. Plaintiff cannot

10

demonstrate it will succeed on the merits of the claims asserted in its Complaint, nor that it will

suffer irreparable injury if the preliminary injunction does not issue, and that the harm to Defendant

does not outweigh the harm to Plaintiff.  As such, the Court will not issue a preliminary injunction

in this case enjoining Defendant from going forward with its foreclosure action.


**IV.    CONCLUSION**

 Accordingly,

 It is ORDERED that Plaintiff's Emergency Motion for Preliminary Injunction [**Docket No.
2, filed November 3, 2006**] is DENIED.

 It is FURTHER ORDERED that Defendant's Motion to Dissolve Temporary Restraining

Order [**Docket No. 4, filed November 13, 2006**] is DENIED.

 It is FURTHER ORDERED that a hearing on Defendant's Motion for Summary Judgment

[**Docket No. 4,  filed November 13, 2006**] will be held on January 10, 2007 at 2:00 p.m.

Plaintiff must file a Response by December 5, 2006, and any Reply Brief must be filed by December

15, 2006.


|  |  |
|---|---|
|  | s/ DENISE PAGE HOOD_____ |
| DATED: <u>November 22, 2006 </u> | DENISE PAGE HOOD |
|  | United States District Judge |


 I hereby certify that a copy of the foregoing document was served upon Michael J. Sharpe,
Esq. And Paul J. Millenbach, Esq. on November 22, 2006, by electronic and/or ordinary mail.

       S/William F. Lewis_____
       Case Manager

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAYO INC., a Michigan corporation,

               Plaintiff,                       Case No. 06-14963

vs.                                     HONORABLE DENISE PAGE HOOD

ZIONS FIRST NATIONAL BANK, a Utah
corporation,

               Defendant.

_____/

**MEMORANDUM OPINION AND ORDER
AND NOTICE OF HEARING**

**I.      INTRODUCTION**

This matter is before the Court on Defendant, Zions First National Bank's Response to Plaintiff's Motion for Preliminary Injunction, Motion to Dissolve Temporary Restraining Order and Motion for Summary Judgment, filed on November 13, 2006. Defendant requests that this Court dissolve the November 3, 2006 Temporary Restraining Order, deny Plaintiff's request for Preliminary Injunction and dismiss Plaintiff's Complaint with Prejudice.

On November 3, 2006, Plaintiff, Sayo, Inc. filed the instant action alleging, Count I, Conversion, Count II, Tortious Interference with Contract/Business Expectancy, and Count III, Promissory Estoppel. On the same day, Plaintiff also filed an Emergency Motion for Temporary Restraining Order or, in the Alternative, for Preliminary Injunction. Pursuant to Fed. R. Civ. P. 65(b), Plaintiff sought to enjoin Defendant from foreclosing on certain real property located in Southfield, Michigan, owned and operated by Plaintiff as a Ramada Inn hotel ("Hotel"). On

1

November 3, 2006, this Court issued a Temporary Restraining Order enjoining the Foreclosure Action scheduled to take place that same day.

## II.    STATEMENT OF FACTS

The instant matter arises out of a Mortgage Agreement entered into by the parties.  In order to secure a loan from Defendant in the amount of $2,000,000.00, Plaintiff gave Defendant a Promissory Note, and  a Mortgage on the real property owned by Plaintiff, located at 17107 W. Nine Mile Road, Southfield, Michigan.  The Hotel, located on the real property, is insured by Traveler's Indemnity Company ("Traveler's").  In January 2004, the Hotel was vandalized during a New Years Eve party held in one of the banquet rooms.  The damage to the Hotel exceeded $2,100,000.00. Traveler's issued eight checks totaling over $2,118,675.30 to Plaintiff for compensation for the property and business income losses.  Traveler's included Defendant as a loss payee on the checks because Defendant is a secured creditor pursuant to the parties' Mortgage Agreement.  Plaintiff's Complaint alleges that Defendant failed to timely tender over $860,000.00 of the insurance proceeds, which according to Plaintiff, was necessary to continue operations and sustain viability of its Hotel business.  Plaintiff also asserts that although Plaintiff informed Defendant of this critical need for the insurance proceeds, Defendant unjustifiably delayed paying Plaintiff.  When Defendant eventually remitted payment it was too late, causing Plaintiff to fail to meet its Mortgage payments due to Defendant.  Defendant asserts that it requested documentation from Plaintiff establishing that the insurance proceeds were going to pay for the necessary repairs for the damage to the Hotel. Defendant argues that Plaintiff was uncooperative in providing this supporting documentation, and as soon as Plaintiff provided it to Defendant, Defendant remitted the outstanding $860,000.00**.**

2

III.    **APPLICABLE LAW & ANALYSIS**

A.    **Defendant's Motion for Summary Judgment**

Defendant argues that the Complaint should be dismissed because this Court should abstain from hearing this matter.  Defendant asserts that Plaintiff neglected to inform this Court that there is another proceeding arising out of the same transaction and between the same parties in Oakland County Circuit Court, case number 06-077576-CK.   On or about September 21, 2006, Defendant filed an action in Oakland County Circuit Court, alleging, Count I, Action on Guaranty, and Count II, Request for a Preliminary Injunction and Appointment of Receiver over the Business Conducted at the Property.

In the Oakland County Circuit Court case, the Court entered a preliminary injunction to prevent Plaintiff from allowing the property to be exposed to further damage.  It is Defendant's contention that the claims Plaintiff asserts in the present matter are compulsory counterclaims and should have been asserted in the state court action pursuant to M.C.R. 2.203(a).  MCR 2.203(a) states:

> In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

The Court will not address the merits of this issue as Plaintiff has not been afforded adequate time to respond to Defendant's Motion for Summary Judgment pursuant to L.R. 7.1(d)(1)(B).[1]  As such,

---

[1]  L.R. 7.1(d)(1)(B) states:

> A response to a dispositive motion must be filed within 21 days after service of the motion.

3

the Court will proceed to the merits of Defendant's request to dissolve the Temporary Restraining Order and Plaintiff's Motion for Preliminary Injunction.

**B.      Defendant's Motion to Set Aside the Temporary Restraining Order**

On November 17, 2006, the Court heard arguments on the Motion to Set Aside the Temporary Restraining Order (TRO).  The Court denied the Motion for reasons stated in its Order granting Plaintiff's Motion for TRO, and in any event the TRO has expired under Fed. R. Civ. P. 65(b), which prohibits granting TROs for a period in excess of 10 days without good cause shown.

Additionally at the hearing, the Court requested the parties submit supplemental briefs on two issues: 1) whether a federal or state court could enjoin or extend the statutory period for redemption, as Defendant claimed no irreparable harm occurred as Plaintiff had a six-month redemption period to repurchase the property; and 2) whether there was any case law on the issue of when irreparable harm occurs, at the foreclosure sale, or once the redemption period has expired.

**C.      Plaintiff's Motion for Preliminary Injunction**

Four factors must be balanced and considered before the Court may issue a preliminary injunction pursuant to Fed.R.Civ.P. 65(b): (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and (4) whether the injunction would serve the public interest.  *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).  "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them."  *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir.

4

1996).

### 1.      First Factor - Likelihood of Success on the Merits

Defendant asserts that Plaintiff will not succeed on the merits of its conversion, tortious interference and promissory estoppel claims.

In order to succeed on its conversion claim, Plaintiff must demonstrate that Defendant knowingly bought, received or aided "in the concealment of any stolen, embezzled, or converted property." M.C.L. § 600.2919a, *see Head v. Phillips Camper Sales & Rental, Inc*., 234 Mich. App. 94, 111, 593 N.W. 2d 595 (1999).  For purposes of the preliminary injunction, Plaintiff has not shown that it is likely to succeed on this claim.  Defendant obtained the insurance proceed checks as a secured creditor due to the Mortgage Agreement entered into between the parties.  The Mortgage Agreement between the parties expressly allows Defendant to receive insurance proceeds due to loss or damage to the property and to request that the damage be adequately repaired, as follows:

> **Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage . . . .

(Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., Mot. to Dissolve T.R.O. and Mot. for Summ. J., Ex. 3, Mortgage Agreement, p. 4)  Plaintiff also admits that Defendant remitted the outstanding $860,000.00 upon presentation of appropriate documentation.

5

In order for Plaintiff to succeed on its tortious interference claim, Plaintiff must demonstrate the following: 1) existence of a valid business relation or expectancy, 2) Defendant's knowledge of the relationship or expectancy, 3) Defendant's intentional interference inducing or causing a breach or termination of the relationship or expectancy and 4) damage to Plaintiff due to the disruption of the relationship or expectancy. *See Woody v. Tamer*, 158 Mich. App. 764, 776-77, 405 N.W. 2d 213 (1987). Defendant argues that Plaintiff likewise cannot succeed on its claim because Plaintiff will be unable to show that by withholding the insurance proceeds, Defendant intentionally interfered with, and ultimately disrupted the business relationship or expectancy with Traveler's. Plaintiff argues that Defendant's actions in withholding the insurance payments from Traveler's was improper and intentional and resulted in the destruction of Plaintiff's hotel business. As stated earlier, the Mortgage Agreement provides that Defendant may obtain the proceeds and request documentation as proof that Plaintiff satisfactorily repaired the damage to the hotel. While Plaintiff complains that the delay in remitting the insurance proceeds was unreasonable, there has been no showing of unreasonableness on the part of Defendant. For purposes of this motion, it appears that Defendant was exercising its rights under the Mortgage Agreement. Plaintiff has not demonstrated that it will succeed on the merits of this claim, as Plaintiff has not shown that Defendant intentionally interfered with, and caused the termination of Plaintiff's business relationship or expectancy with Traveler's.

In order for Plaintiff to be able to succeed on its promissory estoppel claim, Plaintiff must show (1) the existence of a promise, (2) the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be

6

enforced if injustice is to be avoided. *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993). Plaintiff asserts that Defendant promised to tender the insurance proceeds in a timely manner and that Defendant had previously remitted $1,000,000.00. Plaintiff asserts it justifiably relied and presumed, based on Defendant's conduct and promise, that Defendant would timely remit the insurance payments to Plaintiff. Defendant counters that Plaintiff has pointed to no documentation supporting its theory that Defendant promised to remit the insurance payments in a timely manner. Defendant claims it did not discover until August 2004, well after the January 2004 vandalism, that the Hotel was damaged. Defendants also argue that they were seeking appropriate documentation before the release of the $860,000.00. (*See* Mortgage Agreement, p. 4, Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., Mot. to Dissolve T.R.O. and Mot. for Summ. J., Ex. 3) Plaintiff has failed to demonstrate that it will prevail on this claim for purposes of this motion.

### 2.    Second Factor - Irreparable Harm

Defendant asserts that Plaintiff's injury, the foreclosure on the property, originally scheduled for November 7, 2006, is not immediate or irreparable. In Michigan there is a statutorily imposed redemption period of six months following foreclosure. *See* M.C.L. § 600.3140. Plaintiff has the opportunity to pay the amount due and owing and obtain the property within six months after the foreclosure sale. Additionally, Defendant argues that Plaintiff was aware of the foreclosure action several months before Plaintiff filed the instant action and Emergency Motion for Temporary Restraining Order, or in the Alternative, for Preliminary Injunction. As such, the immediacy of the pending foreclosure sale was self-imposed by Plaintiff.

As previously stated, at the November 17, 2006 hearing, the Court requested the parties submit supplemental briefs on two issues regarding foreclosure actions and irreparable harm. In

Plaintiff's Supplemental Memorandum, filed on November 20, 2006, Plaintiff asserts that it will suffer irreparable harm if the foreclosure action is not stayed during these proceedings. The cases cited by Plaintiff in support of its assertion, however, are not directly on point. First, Plaintiff cites two bankruptcy cases in support of its theory that foreclosure on real property should be enjoined due to the resulting irreparable harm. *See In Re Grand Traverse Development Company Ltd. Partnership*, 151 B.R. 792 (W.D. Mich. 1993), *In re Gleasman*, 111 B.R. 595 (Bankr. W.D. Tex. 1990). In the bankruptcy context, the court and the parties are attempting to determine if there are available resources in the debtor's estate to satisfy its obligations to creditors, and this is not the situation in the present matter. The *Gleasman* court held that enjoining foreclosure is appropriate in situations where, if the plaintiff prevails, "the resulting liability would eliminate either the indebtedness or the lien, in turn eliminating the lender's right to foreclose." *In re Gleasman*, 111 B.R. at 601. In this case, as of October 2, 2006, Plaintiff owed a total of $2,150,405.01 on the Mortgage. This amount is over twice the amount of the insurance proceeds Plaintiff claims Defendant unjustifiably withheld for an extended period of time, and therefore, would not eliminate Plaintiff's indebtedness to Defendant. In *Medin*, the Court held that notwithstanding the availability of redemption for the plaintiff, foreclosure on the plaintiff's homestead would be irreparable and the trial court did not abuse its discretion by enjoining the foreclosure action. *Medin v. Liberty State Bank*, 1990 WL 152691 (Minn. App. 1990). This case is distinguishable from the present matter as it involved the plaintiff's homestead and not business property.

Defendant argues that Plaintiff will not be irreparably harmed by the foreclosure action, and in any event, this Court has the discretion to extend the redemption period beyond the statutory 6 month period. However, Defendant's cases are likewise not on point with the present matter.

8

Defendant asserts that this Court is authorized to extend the statutory redemption period as the Michigan Appellate Court has held that "a court may exercise its discretion to extend the redemption period in irregular circumstances such as fraud, accident, or mistake." *Hodge v. Ulmer*, 1997 WL 33343877 (Mich. App. 1997). No party has submitted evidence of fraud, mistake, or accident in this matter. Additionally, in both cases cited by Defendant, the court extended the redemption period for only a short time, in one case for six days and in another case for forty-three days, which may be of little help to Plaintiff in this case. *See Hodge,* 1997 WL 33343877 *1, *Jackson Investment Corp. v. Pittsfield Products, Inc.,* 162 Mich. App. 750, 413 N.W.2d 99 (1987).

Based on the parties' submissions, Plaintiff has not shown irreparable harm will occur at the time of the foreclosure sale since Plaintiff is allowed a redemption period after the foreclosure sale.

### 3. Third and Fourth Factors - Risk of Harm to Plaintiff in Absence of Preliminary Injunction Versus Harm to Defendant and Public Interest

Plaintiff claims that it faces injury to its goodwill and reputation citing *Beaute Craft Supply Co. v. Revlon, Inc.*, 402 F. Supp. 385 (E.D. Mich. 1975). In *Beaute,* the plaintiff sold cosmetics and entered into a franchise agreement with Revlon to sell Revlon products. Revlon later terminated the agreement when the plaintiff began selling a competitor's products. In granting the plaintiff's motion for a preliminary injunction, which required the defendant to continue to do business with the plaintiff, the court found that  termination of the franchise agreement caused irreparable harm to the plaintiff. *Beaute*, 402 F. Supp. at 388. The sale of Revlon products amounted to 20% to 25% of the plaintiff's sales volume and no harm would be done to the defendant in granting the preliminary injunction. *Id*. This case is distinguishable in that *Beaute* involved a franchise agreement and a product with a well-known trademark name.

Plaintiff's reliance upon the Sixth Circuit case of *Basicomputer Corp. v. Scott* is also without

9

merit. 973 F. 2d 507 (6th Cir. 1992). In *Basicomputer*, the Court enjoined the defendants from working with the plaintiff's competitor because "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer* dealt with a non-compete agreement in the employment context, where the defendants went to work for the plaintiff's competitors contrary to the express terms of the non-compete agreement, as well as took documents containing information on the plaintiff's customers and contacted these customers. *Basicomputer* is not on point with the present matter and does not support Plaintiff's argument that it will suffer irreparable harm if the foreclosure action proceeds.

Defendant asserts that a preliminary injunction would greatly harm Defendant as Defendant, in addition to incurring costs and attorney fees in defense of this action, is losing $614.00 per day combined with the outstanding amount owed by Plaintiff under the loan agreement of $1,854,159.76, as well as liens for unpaid taxes and assessments on the property roughly totaling $376,074.00. (Def.'s Resp. to Plf.'s Mot. for Preliminary Injunction, Mot. to Dissolve Temporary Restraining Order and Mot. for Summ. J., Aff. of Kenneth M. Pugh) Plaintiff is currently indebted to Defendant in the amount of $1,854,159.76 and the subject property has liens for unpaid taxes and assessments in the amount of $376,074.00, liens that are superior to Defendant's secured interest in the property.

In terms of public policy, there are public policy arguments in favor of both sides of the dispute. Public policy disfavors sale of real property through the foreclosure actions, but also favors parties to honor contractual agreements, such as the Mortgage Agreement in this case.

### 4.    Balancing the Factors

The first, second and third factors balance in favor of Defendant. Plaintiff cannot

10

demonstrate it will succeed on the merits of the claims asserted in its Complaint, nor that it will

suffer irreparable injury if the preliminary injunction does not issue, and that the harm to Defendant

does not outweigh the harm to Plaintiff.  As such, the Court will not issue a preliminary injunction

in this case enjoining Defendant from going forward with its foreclosure action.


**IV.    CONCLUSION**

    Accordingly,

    It is ORDERED that Plaintiff's Emergency Motion for Preliminary Injunction [**Docket No. 2, filed November 3, 2006**] is DENIED.

    It is FURTHER ORDERED that Defendant's Motion to Dissolve Temporary Restraining Order [**Docket No. 4, filed November 13, 2006**] is DENIED.

    It is FURTHER ORDERED that a hearing on Defendant's Motion for Summary Judgment [**Docket No. 4,  filed November 13, 2006**] will be held on January 10, 2007 at 2:00 p.m. Plaintiff must file a Response by December 5, 2006, and any Reply Brief must be filed by December 15, 2006.


                                                    s/ DENISE PAGE HOOD

DATED: <u>November 22, 2006  </u>              DENISE PAGE HOOD
                                       United States District Judge


    I hereby certify that a copy of the foregoing document was served upon Michael J. Sharpe, Esq. And Paul J. Millenbach, Esq. on November 22, 2006, by electronic and/or ordinary mail.

                                              S/William F. Lewis
                                            Case Manager